# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1996

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9603-CC-00109** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SEVIER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. REX HENRY OGLE** |
| **JERRY LYNN WALDE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Aggravated Sexual Battery-Direct** |
| | ) | **Appeal)** |

FOR THE APPELLANT:

LU ANN BALLEW
Assistant Public Defender
P. O. Box 416
Dandridge, TN  37725-0416

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

AL SCHMUTZER, JR.
District Attorney General

JAMES L. GASS
Assistant District Attorney
P. O. Box 70
Dandridge, TN  37725-0070

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

A Sevier County Circuit Court jury found Appellant Jerry Lynn Walde guilty of three counts of aggravated sexual battery. As a Range I standard offender, he received a sentence of eleven years for each count. The trial court ordered two of the sentences served concurrently but the third served consecutively, for an effective sentence of twenty-two years in the Tennessee Department of Correction. In this direct appeal, Appellant presents the following issues for review: (1) whether the State failed to timely present his case to a grand jury; (2) whether the State violated his right to a speedy trial; (3) whether the trial court erred in admitting his statement to authorities in its entirety; (4) whether the trial court erred in limiting defense counsel's voir dire of the jury; (5) whether the evidence presented at trial is legally sufficient to sustain a conviction for the January 9, 1995 aggravated sexual battery; (6) whether the trial court erred in failing to require the State to make an election as to the set of facts relied upon for each charged offense; and (7) whether the sentence is excessive.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

As accredited by the jury's verdict, the proof shows that, during the first two weeks of January, 1995, J.H.,[1] a ten-year-old female, was sexually abused on three separate occasions by Appellant, an uncle with whom she lived. On January 12, 1995, J.H. reported the abuse to Penny Inman of the Jefferson County Department of Human Services. Referring to the area covered by her underwear as her "downer part," J.H. stated that Appellant touched her "downer part" with his hands,

_____

[1] It is the policy of this Court to refrain from referring by name to minor victims of sex offenses. The victim will be referred to by her initials.

-2-

his mouth, and his "downer part." Later that day, Ms. Inman informed J.H.'s aunt, Appellant's wife, of the allegations. Appellant's wife in turn informed Appellant.

That evening, Appellant proceeded to the Jefferson County Sheriff's Office and met with Detective Bud McCoig. According to Detective McCoig, Appellant stated that he had sexually abused a girl and was there to pay for it. Having waived his rights, Appellant gave the following statement:

> About two weeks ago, me, [J.H.], and [J.H.'s sister] were at home watching movies. [J.H.'s sister] was in her room playing with Barbie dolls or something. Me and [J.H.], age 10, was sitting on the couch. She was in her nightgown. I put my hand over her. I started feeling her private part on top of her clothes. A day or two later, I touch her again in her private parts. Three or four days later, I took my clothes off. I pulled my pants down and she, [J.H.], pulled her pants down. I had an erection; she just touched my penis and I touched her vagina. I just rubbed on the outside of her vagina. This happened over a period of two weeks. I done a stupid thing and now I got to pay for it.

The Jefferson County Grand Jury indicted Appellant on three counts of aggravated sexual battery in violation of Tennessee Code Annotated Section 39-13-504(a)(4). However, during the investigation of the case, the State discovered that the offenses had actually been committed in Sevier County. On June 28, 1995, Appellant was properly indicted in Sevier County and the charges in Jefferson County were dismissed According to the indictment, Appellant committed aggravated sexual battery on January 7 and 9 and on one other unspecified date in January

On September 28, 1995, Appellant was tried before a jury in the Sevier County Circuit Court. At trial, Appellant testified that he had never sought sexual gratification from contact with J.H. but admitted that he had wrestled with J.H., that he had once awoken from a nap with his hand between J.H.'s legs, and that J.H.

had once made incidental contact with his erect penis while they were watching television in bed. Appellant further testified that he did not read the statement taken by Detective McCoig before he signed it and that the statement failed to accurately reflect what he told the detective. At the conclusion of the trial, the jury found Appellant guilty of three counts of aggravated sexual battery. Following a sentencing hearing on November 6, 1995, the trial court imposed an effective sentence of twenty-two years.

## II. PRESENTMENT

Appellant first alleges that the State failed to timely present his case to a grand jury. According to the Tennessee Rules of Criminal Procedure, "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court . . . , the court may dismiss the indictment . . . ." Tenn. R. Crim. P. 48(b). In reviewing a motion to dismiss for failure to timely present, the trial court must consider (1) the length of the delay, (2) the reasons for the delay, (3) the prejudice to the defendant, and (4) waiver by the defendant. State v. Benn, 713 S.W.2d 308, 311 (Tenn. 1986). The decision of whether to grant or deny such a motion lies within the discretion of the trial court. Id. To establish a violation of due process rights, the evidence must show that there was a delay, that the defendant was prejudiced, and that the State intentionally delayed the prosecution in order to gain a tactical advantage. United States v. Marion, 404 U.S. 307, 324 (1971); State v. Baker, 614 S.W.2d 352, 354 (Tenn. 1981); State v. Dykes, 803 S.W.2d 250, 255-56 (Tenn. Crim. App. 1990).

Mindful of the factors delineated in Benn and the dictates set out in Marion, Baker, and Dykes, we look to the circumstances surrounding Appellant's case. The period of time between Appellant's arrest and the presentment of his case to the appropriate grand jury was approximately five and a half months. The reason for

the delay is uncontested: the State mistakenly believed that Appellant, who lived very near the county line, committed the offenses in Jefferson County. Once the error was discovered, the State presented Appellant's case to the Sevier County Grand Jury and dismissed the charges in Jefferson County. Appellant concedes that the delay was unintentional but argues that, due to his extended period of incarceration, he was unable to effectively prepare a defense. Appellant asserted his right to timely presentment by filing a motion to dismiss on July 26, 1995.

First and foremost, there is no evidence whatsoever that the State intentionally delayed Appellant's prosecution in order to gain a tactical advantage, a point conceded by Appellant. See Marion, 404 U.S. at 324; Baker, 614 S.W.2d at 354; Dykes, 803 S.W.2d at 255-56. Moreover, Appellant fails to adequately demonstrate prejudice. See Benn, 713 S.W.2d at 311. The record does not reflect nor does Appellant allege that defense witnesses died or moved away during the time period between his arrest and the presentment of his case to the Sevier County Grand Jury. Furthermore, Appellant fails to specify how his incarceration precluded preparation of an effective defense. We thus conclude that the trial court properly denied Appellant's motion to dismiss for failure to timely present the charges to the grand jury.

### III.  SPEEDY TRIAL

Appellant next alleges that the State violated his constitutional right to a speedy trial.[2] Both the United States and the Tennessee Constitutions guarantee

---

[2] Appellant also alleges that the trial court failed to comply with Rule 50 of the Tennessee Rules of Criminal Procedure, requiring that defendants in custody be given preference over other criminal cases. The record, however, is devoid of any underlying support for such an allegation. Because

the right to a speedy trial.  See U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  This right arises only after formal accusation, either by arrest or by grand jury action.  State v. Wood, 924 S.W.2d 342, 345 (Tenn. 1996).  To determine if a defendant's right to a speedy trial has been violated, a reviewing court must consider the following four factors:  (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.  Barker v. Wingo, 407 U.S. 514, 530 (1972); State v. Bishop, 493 S.W.2d 81, 83-84 (Tenn. 1973).

The first factor, length of the delay, serves as a triggering mechanism, necessitating consideration of the other three factors.  Barker, 407 S.W.2d at 530.  The reasonableness of the delay depends upon the complexity of the case.  Id. at 530-31.  This Court has held that a delay of as long as two years, standing alone, will not support the finding of a speedy trial violation.  State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994).  Here, the length of delay between Appellant's arrest and his trial was approximately eight and a half months.  While we do not find this delay egregious under the circumstances, we will, for the purpose of review, consider the remaining factors.

The second factor, reason for the delay, generally falls into one of four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense.  Wood, 924 S.W.2d at 346-47.  Both the State and Appellant agree that there were two reasons for the delay.  First, as discussed previously, the State originally indicted Appellant in the wrong county.

---

the record fails to substantiate Appellant's claim, we find it without merit.

-6-

Second, the victim was taken to California by her mother and had to be legally compelled to return to Tennessee to testify at trial. We believe that the first reason, although understandable given Appellant's residence near the county line, falls into the second category described in Wood and weighs against the State although not as heavily as deliberate delay. See id. The second reason, however, falls into the third category and does not weigh against either party. See id.

The third factor, the defendant's assertion of the speedy trial right, is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied. Barker, 407 S.W.2d at 531-32; Bishop, 493 S.W.2d at 85. Appellant first asserted his speedy trial right in Jefferson County on June 16, 1995 and then again in Sevier County on July 12, 1995. This factor weighs in favor of Appellant.

The fourth factor, whether the defendant was prejudiced by the delay, is the most important factor. Wood, 924 S.W.2d at 348. Three interests of the defendant are to be considered: (1) preventing oppressive pretrial confinement; (2) minimizing anxiety and concern that accompanies prosecution; and (3) limiting the possibility that a defense will be impaired. Barker, 407 U.S. at 532. As discussed previously, Appellant fails to assert any specific impairment to his defense. Moreover, in response to Appellant's motion for a speedy trial, the trial court, in an effort to prevent oppressive pretrial confinement, reduced his bond to one thousand dollars and ordered the case set for trial on September 25 or 27, 1995. We find that this factor weighs heavily in favor of the State.

In light of the minimal length of the delay, the justifiable reasons for the delay, and, most importantly, the lack of any particularized prejudice to Appellant, we

conclude that the trial court properly denied Appellant's motion to dismiss for failure to provide a speedy trial.

## IV.  APPELLANT'S STATEMENT TO AUTHORITIES

Appellant also alleges that the trial court erred in admitting his statement to authorities in its entirety.  Relying upon the approximate dates given in his statement as compared to the dates set out in the indictment, Appellant argues that the statement included references to uncharged conduct and that its admission violates Tennessee Rule of Evidence 404(b) and State v. Rickman, 876 S.W.2d 824 (Tenn. 1994).

> Rule 404(b) states as follows:
>
> (b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait.   It may, however, be admissible for other purposes.   The conditions which must be satisfied before allowing such evidence are:
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

In Rickman, the defendant was indicted for one count of statutory rape and one count of incest, both charges arising from the same incident in August of 1991. 876 S.W.2d at 826 n.1.  In a statement to authorities, the defendant admitted that he had engaged in various forms of sexual contact with the victim over a period of approximately six years.  Id. at 826.  The trial court excluded that portion of the

-8-

statement in which the defendant discussed sexual contact with the victim before the August incident charged in the indictment. Id. However, during the State's case-in-chief, the trial court did allow the victim to testify about prior sexual contact with the defendant for the purpose of corroboration. Id. The victim testified that the sexual contact had begun when she was about seven years old and had eventually progressed to full sexual intercourse. Id. The victim estimated that she had engaged in sexual intercourse with the defendant between twenty and thirty times. Id. On appeal, the Tennessee Supreme Court held that, under Rule 404(b), evidence of the defendant's sexual misconduct not charged in the indictment and not connected to any of the charges in the indictment was inadmissible in the State's case-in-chief as irrelevant and prejudicial. Id. at 829. This rule was based upon "the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial." Id. at 828.

Appellant's statement was given to authorities on January 12. It begins with the reference "about two weeks ago" and goes on to describe in general terms three incidents of sexual contact with the victim over a period of four to six days. The indictment alleges unlawful sexual contact on January 7 and 9 and on one other unspecified date in January. We first note that the inconsistency between Appellant's statement and the indictment with regard to the dates of the unlawful contact is immaterial. This Court has previously held that the actual date of the commission of an offense may be different than that charged in the indictment so long as the proof establishes that the offense occurred prior to the finding and returning of the indictment. See State v. Chance, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989); see also State v. Perry, No. 03C01-9401-CR-00016, 1995 WL 433319, at *3 (Tenn. Crim. App. July 24, 1995), perm app. denied, (Tenn. Dec. 28,

1995). It is undisputed that the offenses discussed in Appellant's statement occurred prior to the finding and returning of the indictment. Moreover, unlike in Rickman, where there was evidence of a long-term history of abuse, Appellant's statement is limited to the same number of incidents as set out in the indictment and in no way reflects a pattern of abuse from which the jury might improperly convict him for his bad character or his apparent propensity to commit a crime. See Rickman, 876 S.W.2d at 828. In our opinion, Appellant's statement did not constitute evidence of uncharged sexual misconduct, as prohibited by Rickman, but instead constituted evidence of the exact misconduct for which Appellant was on trial. Any inconsistencies between Appellant's statement and the State's theory of the case then become questions for reconciliation by the jury as the exclusive trier of fact. We distinguish the case sub judice from Rickman for the foregoing reasons and find that the trial court did not err in admitting Appellant's statement in its entirety.

## V. VOIR DIRE

Appellant alleges that the trial court erred in limiting defense counsel's voir dire of the jury. He argues that the trial court improperly prohibited open-ended questions designed to elicit the prospective jurors' attitudes, feelings, biases, and prejudices as they related to the case, thereby compromising his right to a trial by an impartial jury.

During voir dire, the following exchange took place:

DEFENSE COUNSEL: [Y]ou will hear [the victim] say that [Appellant] touched her in some of those inappropriate places. You will also hear her say that he made her touch him in an inappropriate place on his body.
[Prospective Juror], knowing that that's what you are probably going to hear from this ten-year-old girl as part of the State's proof, how do you feel about that at this point?

PROSPECTIVE JUROR: Well, I'll just have to hear her testimony and you know, all the testimony that's given, then decide for myself.

DEFENSE COUNSEL: Okay. I'm not sure what you mean exactly by "I'll just have to hear all the testimony." Could you go a little bit farther into that?

THE STATE: If it please the Court, I guess I'm going to interpose an objection at least with regard to . . . the jurors expressed, I think the standard is can they be fair and impartial.

THE COURT: Approach the bench, counsel, for just a moment.

[Whereupon, a bench conference was held on the record in the presence of the prospective jurors but out of the hearing of the prospective jurors.]

THE COURT: I think the nature of your open-ended questions sort of leaves them uncertain about what you're asking. You know, how do you feel about that. I don't think that you can seek commitments from them as to how they'll vote based on that. I think it would probably be best if you would, you know, at least as to that particular question, I believe you asked them how they would react to that or whatever, and so he told you that he would just have to hear all the proof. I don't know what more he could say. So don't ask them open-ended questions. I believe that's . . .

DEFENSE COUNSEL: Is that not permissible?

THE COURT: It may be . . .

DEFENSE COUNSEL: What I'm trying to do is elicit their personal opinion and it's kind of hard . . .

THE COURT: About what?

DEFENSE COUNSEL: About the burden of proof, about bias, you know, whether they automatically assume that he's . . .

THE COURT: Ask them that, ask them that instead of the open-ended questions, because they don't know what you're asking.

DEFENSE COUNSEL: Okay.

According to the Tennessee Rules of Criminal Procedure, the trial court "shall permit questioning by the parties for the purpose of discovering bases for challenge

for cause and enabling an intelligent exercise of peremptory challenges." Tenn. R. Crim. P. 24(a). The supervision of voir dire rests within the sound discretion of the trial court. State v. Cazes, 875 S.W.2d 253, 262 (Tenn. 1994), cert. denied, 115 S. Ct. 743 (1995). As a result, this Court must uphold the ruling of the trial court unless the defendant establishes the existence of a clear abuse of that discretion. State v. Raspberry, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993).

Here, the trial court expressed concern that the open-ended questions posed by defense counsel left the prospective jurors uncertain as to how to respond. It appears from our reading of the record that this concern centered on the manner in which the questions were asked, not the information the questions were designed to elicit. Requiring defense counsel to ask clearer, more-pointed and understandable questions is not an abuse of discretion. We do not believe that the trial court limited defense counsel's ability to conduct an effective voir dire.

## VI. SUFFICIENCY OF THE EVIDENCE

Appellant alleges that the evidence presented at trial is legally insufficient to sustain a conviction for the January 9, 1995 aggravated sexual battery. He argues that neither the victim's testimony nor his statement to authorities establishes that any unlawful sexual contact occurred on January 9.

When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v.

<u>Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. <u>State v. Carey</u>, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. <u>State v. Johnson</u>, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. <u>State v. Williams</u>, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. <u>State v. Black</u>, 815 S.W.2d 166, 175 (Tenn. 1991).

According to the indictment, Appellant committed three acts of aggravated sexual battery upon the victim, one of which occurred on January 9. As Appellant correctly points out, not only did the State fail to offer sufficient evidence to support its theory that Appellant committed aggravated sexual battery on January 9, but the victim actually testified during direct examination that no sexual contact occurred after January 7. However, as stated previously, the actual date of the commission of an offense may be different than that charged in the indictment so long as the proof establishes that the offense occurred prior to the finding and returning of the indictment. <u>See</u> <u>Chance</u>, 778 S.W.2d at 462; <u>see also</u> <u>Perry</u>, 1995 WL 433319, at *3. During her testimony, the victim detailed three forms of sexual contact: (1) Appellant touched her "downer part" with his hands; (2) Appellant touched her

"downer part" with his mouth; and (3) Appellant touched her "downer part" with his "downer part." The indictment sets out only these three incidents of unlawful conduct. The fact that there is an inconsistency between the victim's testimony and the indictment with regard to the January 9 battery is immaterial under the prior holdings of this Court. Therefore, we find that, when viewed in a light most favorable to the State, the evidence is sufficient to sustain all three convictions for aggravated sexual battery.

## VII. ELECTION

Appellant alleges that trial court erred in failing to require the State to make an election as to the set of facts relied upon for each charged offense. He argues that J.H.'s testimony established more than the three instances of unlawful sexual contact charged in the indictment.

Under Tennessee law, a defendant has a fundamental constitutional right to a unanimous verdict before a conviction for a criminal offense may be imposed. State v. Shelton, 851 S.W.2d 134, 134 (Tenn. 1993); State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). Protection of this right often requires "special precautions [by the court] to ensure that the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on different offenses in evidence." Shelton, 851 S.W.2d at 134. Where there is evidence of multiple offenses, the precaution is the doctrine of election, requiring the State to elect and identify at the end of its case-in-chief the exact offense for which it seeks conviction. Id.; Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The Tennessee Supreme Court has made the following observation:

> We appreciate the difficulties involved in prosecuting cases
> of sexual abuse committed against small children. In such
> cases, the rules of evidence and the rules of procedure have
> been relaxed to some extent to accommodate very young
> witnesses. Nevertheless, the constitutional protections

> guaranteed a criminal defendant, who is presumed by law to
> be innocent until proven guilty, cannot be suspended
> altogether because of the victim's age or relative inability to
> testify.   In cases such as this one, the state must either limit
> the testimony of prosecuting witnesses to a single event, or
> prepare the case so that an election can be made before the
> matter is submitted to the jury to decide.

Shelton, 851 S.W.2d at 139.

Here, the State limited the testimony of the victim to three specific incidents of unlawful sexual conduct.  The victim testified that Appellant touched her "downer part" with his hands, his mouth, and his "downer part."  With the exception of the exact timing of the incidents and the specific description of the contact, all evidence presented to the jury, including Appellant's own statement and testimony, remained consistent with the State's theory.  Because the evidence established only one unlawful incident for each count in the indictment, a "patchwork verdict" was not possible and election was therefore not necessary.  See Shelton, 851 S.W.2d at 136.

## VIII.  SENTENCING

Finally, Appellant alleges that his sentence is excessive.  Specifically, Appellant argues that the trial court erred in determining the length of his sentence and in imposing consecutive sentences.

When an appeal challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct.  Tenn. Code Ann. § 40-35-401(d). However, this presumption of correctness is "conditioned upon the affirmative showing that the trial court in the record considered the sentencing principles and all

relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to demonstrate such consideration, review of the sentence is purely de novo. Id. If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this Court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In conducting a review, this Court must consider the evidence, the presentence report, the sentencing principles, the arguments of counsel, the nature and character of the offense, mitigating and enhancement factors, any statements made by the defendant, and the potential for rehabilitation or treatment. State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). The defendant bears the burden of showing the impropriety of the sentence imposed. State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993).

Appellant was convicted of three counts of aggravated sexual battery, a Class B felony. See Tenn. Code Ann. § 39-13-504(b). As a Range I standard offender convicted of a Class B felony, Appellant's statutory sentencing range for each conviction was eight to twelve years. See id. § 40-35-112(a)(2). The trial court found the following enhancement factors applicable to each conviction:

> (1) the defendant has a previous history of criminal
> convictions or criminal behavior in addition to those
> necessary to establish the appropriate range; and
>
> (2) the defendant abused a position of public or private trust.

Id. § 40-35-114(1), (15). The trial court found the following mitigating factor applicable to each conviction but gave it little weight:

> (1) the defendant's criminal conduct neither caused nor
> threatened serious bodily injury.

Id. § 40-35-113(1). The trial court then imposed a mid-range sentence of eleven years for each offense, ordering two of the sentences served concurrently but the

third served consecutively, for an effective sentence of twenty-two years.  We will address each of Appellant's sentencing arguments in turn.

## A.  LENGTH OF SENTENCE

Appellant first maintains that the trial court erred in determining the length of his sentence by improperly applying certain enhancement factors and failing to apply certain mitigating factors.

In the absence of enhancement and mitigating factors, the presumptive length of sentence for a Class B, C, D, and E felony is the minimum sentence in the statutory range while the presumptive length of sentence for a Class A felony is the midpoint in the statutory range.  Tenn. Code Ann. § 40-35-210(c).  Where one or more enhancement factors apply but no mitigating factors exist, the trial court may sentence above the presumptive sentence but still within the range.  Id. § 40-35-210(d).  Where both enhancement and mitigating factors apply, the trial court must start at the minimum sentence, enhance the sentence within the range as appropriate to the enhancement factors, and then reduce the sentence within the range as appropriate to the mitigating factors.  Id. § 40-35-210(e).  The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record.  State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

## 1.  PREVIOUS CRIMINAL HISTORY

Appellant argues that the trial court improperly applied enhancement factor (1), concerning his previous criminal history.  Appellant concedes that his pre-sentence report reveals two convictions for driving under the influence of an intoxicant, a conviction for driving with a suspended license, and a conviction for

-17-

speeding but argues that these offenses cannot be considered under enhancement factor (1) because they are dissimilar to his current offenses. However, nothing in the Sentencing Act requires that prior convictions be similar in nature to the conviction in question. Moreover, this Court has previously allowed consideration of such driving-related offenses when applying enhancement factor (1). See, e.g., State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995)(driving with a revoked license); State v. Miller, No. 01C01-9309-CR-00329, 1994 WL 236014, at *6 (Tenn. Crim. App. June 2, 1994), perm. app. denied (Tenn. Sept. 12, 1994)(driving under the influence of an intoxicant and driving with a revoked license); State v. Upman, No. 03C01-9402-CR-00052, 1994 WL 396355, at *5 (Tenn. Crim. App. Aug. 2, 1994)(speeding); State v. Hurt, No. 01C01-9306-CC-00189, 1993 WL 503713, at *3 (Tenn. Crim. App. Dec. 9, 1993)(speeding); State v. Boswell, No. 2, 1991 WL 2866, at *1 (Tenn. Crim. App. Jan. 16, 1991)(driving with a suspended license and speeding). Thus, we conclude that the trial court's application of enhancement factor (1) was proper.

### 2. NEITHER CAUSED NOR THREATENED SERIOUS BODILY HARM

Appellant argues that the trial court should have applied mitigating factor (1), providing that "[t]he defendant's conduct neither caused nor threatened serious bodily injury." It is apparent from the record that the trial court did apply this mitigating factor but chose to give it little weight, stating "serious bodily injury did not occur here. There's no doubt about that. You know, I will give him some benefit . . . ." As stated previously, the weight afforded a mitigating factor is left to the discretion of the trial court so long as it complies with the purposes and principles of the Sentencing Act and its findings are supported by the record. See Hayes, 899 S.W.2d at 185. We do not believe that the trial court has abused its discretion in this area and thus decline to afford any more weight to this mitigating factor.

### 3. NON-STATUTORY MITIGATING FACTORS

Finally, Appellant argues that the trial court should have considered other non-statutory mitigating factors pursuant to Tennessee Code Annotated Section 40-35-113(13). Specifically, Appellant points to the fact that he turned himself in and gave a statement to the authorities. While Appellant did voluntarily make a statement to authorities, he subsequently denied its accuracy and moved to exclude it from evidence. We do not believe that Appellant's actions warrant consideration as a mitigating factor. Even if given some marginal weight, we do not believe that such actions justify a reduction in his mid-range sentence.

### B. CONSECUTIVE SENTENCING

Appellant also contends that the trial court erred in imposing consecutive sentences. When imposing sentences for multiple offenses, the trial court has the discretion to order the sentences served concurrently or consecutively. Tenn. Code Ann. § 40-20-111(a). The imposition of consecutive sentences is appropriate if the defendant has been convicted of more than one offense and the trial court finds, by a preponderance of the evidence, one or more of the following criteria:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the

> residual, physical and mental damage to the victim or
> victims;
>        (6) The defendant is sentenced for an offense
> committed while on probation; or
>        (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

Here, the trial court relied upon subsection (5) in ordering consecutive sentences. Appellant argues that this reliance is misplaced because of the short-term nature of the abuse. However, the time-span of the undetected unlawful conduct is but one consideration under subsection (5). The remaining considerations include the relationship between the defendant and the victim, the nature and scope of the sexual acts, and the extent of the residual, physical and mental damage to the victim. See Tenn. Code Ann. § 40-35-115(b)(5). In accordance with the statute, the trial court made the following findings: (1) Appellant was the victim's uncle, resided with her, and, along with his wife, was responsible for her care; (2) the offenses involved three different forms of unlawful contact, including an incident where Appellant lay nude in the bed with the victim; and (3) the victim suffers from some residual mental problems. In light of these findings, most significantly the relationship between Appellant and the victim, we do not believe that the trial court abused its discretion in imposing consecutive sentences. We further believe that consecutive sentences are necessary to protect the public from Appellant's possible future criminal conduct and that the aggregate sentence is reasonably related to the severity of Appellant's present offenses. See State v. Woodcock, 922 S.W.2d 904, 915 (Tenn. Crim. App. 1995).

Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-20-

CONCUR:


_____
GARY R. WADE, JUDGE


_____
DAVID H. WELLES, JUDGE

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1996 SESSION

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9603-CC-00109 |
| Appellee, | * | SEVIER COUNTY |
| VS. | * | Hon. Rex Henry Ogle, Judge |
| JERRY LYNN WALDE, | * | (Aggravated Sexual Battery-3 Counts) |
| Appellant. | * | |

**DISSENTING OPINION**

I concur with the results as to the defendant's first, second, fourth, fifth and seventh issues. I agree with the resolution of the third issue (Section IV), but disagree as to the rationale. I dissent, however, based upon the court's resolution of the sixth issue.

I.

In his third issue, the defendant argued that the trial court erred by not permitting him to redact his statement prior to its admission in evidence. The majority distinguishes this case from State v. Rickman, 876 S.W.2d 824 (Tenn. 1994), to conclude that the defendant's statement is admissible in its entirety. I agree that the statement is admissible in its entirety, but see no reason to distinguish Rickman from the facts here, particularly as to whether these incidents showed a pattern of abuse that would lead a jury to improperly convict the defendant.

In Rickman, the indictment charged unlawful contact on August 11. Rickman's statement as to unlawful contact before August 11 was redacted because it was "wholly independent from the sex crime for which the defendant was indicted." The supreme court cited to Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980), for the general rule:

> It is well established, of course, that in a criminal trial
> evidence that the defendant has committed some
> other crime wholly independent of that for which he is
> charged, even though it is a crime of the same

> character, is usually not admissible because it is
> irrelevant.

Id., 876 S.W.2d at 827 (emphasis added). The court in Rickman affirmed the

special rule articulated in State v. Shelton, 851 S.W.2d 134 (Tenn. 1993),

which allowed evidence of other sex crimes

> when [the] indictment is not time specific and when
> the evidence relates to sex crimes that allegedly
> occurred during the time as charged in the
> indictment. In such cases, the State must elect at
> the close of its proof-in-chief as to the particular
> incident for which a conviction is being sought.

Id. at 829.

Recently, our supreme court, after review of Rules 401, 402, and

404(b), Tenn. R. Evid., determined that the standard of appellate review, after

the trial court had allowed evidence of relevant prior bad acts, is abuse of

discretion so long as the trial court complied with the procedural requirements

of the rules. State v. James DuBose, No. 01S01-9602-CC-00029, slip op. at 7

(Tenn., at Nashville, Sept. 29, 1997). Here, the trial judge heard arguments

outside the presence of the jury on the defendant's pre-trial motion to redact

his statement. The following appears in the record:

> THE COURT: Well, he says here that this happened
> over a period of two weeks. So I think in all candor
> with you that that will have to be admissible. You
> know, if he's not clear on the time frame and as I
> understand the case law in regards to the testimony
> of underage victims, the appellate courts have given
> a lot greater leeway on those types of cases and
> those types of victims obviously than they have other
> cases. And in fact, as we know on other cases,
> you've got to be pretty doggoned specific. But I don't
> think, at least based on his own statement, he's clear
> as to the time frame.

DEFENSE COUNSEL: It's not clear, but the phrase "about two weeks ago" could mean as early as December 29th.

THE COURT: It very well could be.

DEFENSE COUNSEL: ...or possibly a day or two earlier.

THE COURT: And so after I hear the proof, you know, it may be such that as to at least one of the counts it may not fly, I don't know. You know, we'll see about that as it comes in, but in regards to his statement, because it is not clear, you know, I don't think it can be redacted.

Thus, the trial court ruled that the incidents included in the defendant's statement could have been the same incidents for which he was indicted and not, therefore, prior acts. Under the appropriate standard of review, that decision, in my view, should be upheld. The incidents in the defendant's statement are not "wholly independent" of the pending charges, and Rule 404(b), Tenn. R. Evid., does not exclude the incidents as irrelevant and unduly prejudicial prior bad acts.

II.

As to the defendant's sixth issue on election, I disagree with the majority of this court as to both the rationale and the result. The law on election has been primarily framed by three major cases. Burlison v. State, 501 S.W.2d 801 (Tenn. 1973); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); and Tidwell v. State, 922 S.W.2d 497 (Tenn. 1996).

In Burlison our supreme court considered a number of cases for guidance in its ruling, including Jamison v. State, 94 S.W. 675 (Tenn. 1906).

In Jamison, where the indictment charged unlawful sexual contact on a particular day, the state introduced proof of several acts of unlawful contact; the trial court denied defendant's motion for election. On appeal the state argued that violation of the age of consent law was a continuous offense. The supreme court held as follows:

> [T]he State could be required to elect the specific offense upon which a verdict of guilty would be demanded, for three fundamental reasons. First, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue, and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

Burlison, 501 S.W.2d at 803 (discussing the ruling in Jamison, which has been distinguished and partially overruled by Rickman on an unrelated issue).

The court in Burlison next cited Vinson v. State, 203 S.W. 338 (Tenn. 1918), and Cox v. State, 270 S.W.2d 182 (Tenn. 1954). In Vinson, the defendant was indicted for violating the age of consent law in the month of September. At trial, the state offered proof of violations in July, September, and December. The defense request for an election was denied. The supreme court reversed because the "error committed immediately touched the constitutional rights of the defendant . . . ." Id. In Cox, the supreme court had ruled that the purpose of election is so the "jury will then know for which offense the State seeks a conviction, and will all vote upon guilt or innocence for that particular offense." Id.

After examining the rulings on each of these cases, the court in Burlison held as follows:

> [I]t was the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense.

Id. at 804.

In Shelton, the indictment charged unlawful sexual penetration of one victim and unlawful sexual contact of two other victims on or about the ___ day of ___, 1989. The time was narrowed to April through September of that year. In lieu of election, the trial court gave a specific instruction to the jury:

> You cannot in your verdict find that the defendant committed more than one offense against each alleged victim. The law requires that every juror be united on the one alleged offense in each count in the indictment. If you find beyond a reasonable doubt that there has been more than one alleged offense to an alleged victim you must isolate your verdict on the first alleged occurrence after April 7, 1989 and before September 6, 1989, as to each victim.

Shelton, 851 S.W.2d at 136. The supreme court held that this instruction was an inadequate substitute for election. Id. Citing to the three basic reasons for election, as confirmed in Burlison, the court concluded that although the "state is not required to identify the particular date of the chosen offense ... the state must either limit the testimony of prosecuting witnesses to a single event, or prepare the case so that an election can be made before the matter is submitted to the jury to decide. Id. at 137, 139.

-26-

Election is particularly important in sexual abuse trials where children testify. The supreme court discussed these special problems in its Shelton opinion:

> If, for example, the evidence indicates various types of abuse, the prosecution may identify a particular type of abuse and elect that offense. Moreover, when recalling an assault, a child may be able to describe unique surroundings or circumstances that help to identify an incident. The child may be able to identify an assault with reference to a meaningful event in his or her life, such as the beginning of school, a birthday, or a relative's visit. Any description that will identify the prosecuted offense for the jury is sufficient. In fulfilling its obligation under Burlison to ensure that an election occurs, the trial court should bear in mind that the purpose of election is to ensure that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask a conviction, then the court cannot be assured of a unanimous decision.

Id. at 138.

Although the right to a unanimous verdict is fundamental, the failure to elect may be classified as harmless, depending on the circumstances. In Shelton, one of three victims testified to a single instance of partial intercourse on her birthday. There were multiple indictments, but only one charging rape. The jury returned a guilty verdict only as to one count of aggravated rape for that victim. The court concluded that the "jurors must have considered the evidence of this particular incident in convicting the defendant...[and] therefore, the Burlison error... was harmless beyond a reasonable doubt ...." Id. at 138. As to the second victim, however, the court found the failure to elect was not harmless and reversed the conviction. The second victim had testified to several occasions of digital fondling and did not

-27-

differentiate the events.  The jury returned a guilty verdict to aggravated

sexual battery. The court ruled that the conviction could not be upheld due to

the "nature of the evidence presented on this charge and the Burlison error

resulting from the state's failure to elect. ..." Id. at 139.

In Tidwell, the supreme court stated that lack of certainty

regarding the unanimity of the jury's verdict was the more troublesome aspect

of failure to elect:

> The indictments as returned contain fifty-six counts--
> fourteen each of aggravated rape, statutory rape,
> incest, and contributing to the delinquency of a
> minor. Each count charges the commission of an
> offense on the "___" day of a named month.  Thus, it
> is quite evident that there is no apparent means to
> differentiate among various counts of the same
> offense. Additionally, the indictments provide no
> means to enable a fact-finder to match a specific
> conduct to a specific count.
> ***
> Thus, a defendant's right to a unanimous verdict
> before imposition of conviction requires that trial
> court to take precautions to ensure that the jury
> deliberates over the particular charged offense,
> instead of assembling a "patchwork verdict" based
> on the different offenses in evidence.

Id. at 500-01.

Here, the three indictments charge one count each of aggravated

sexual battery on January 7, 9 and "___", 1995.  The victim testified to more

than three incidents of such unlawful contact:

1. "He [defendant] put his downer part on mine [sometimes
   while defendant was wearing clothes]."  (Tr. 44).

2. "He [defendant] put his downer part on mine [sometimes
   while defendant was not wearing clothes]."  (Tr. 44-45).

3. Defendant touched victim on her "downer part" with "his hands" ... on top of her clothes. (Tr. 45-46).

4. Defendant touched victim on her "downer part" with "his hands" ... underneath her clothes. (Tr. 45-46).

5. Defendant touched victim's "lower part" with "[h]is mouth." (Tr. 51).

More troublesome is that the defendant acknowledged several incidents of unlawful sexual contact in either his confession or his trial testimony. The statement of the defendant encompassed four instances of sexual misconduct:

1. "I put my hand over her. I started fe[e]ling her private part on top of her clothes."

2. "A day or two la[]ter, I touch[ed] her again in her private parts."

3. "Three or four days la[]ter I took my clothes off ... she just touched my pe[]nis."

4. "I touched her v[a]gina... I just rubbed on the outside of her v[a]gina."

(See Exhibit #2, Tr. 137). The majority found that the state limited the testimony of the victim to three specific incidents of unlawful sexual conduct, and therefore, election was not required. I cannot agree. While the victim testified as to three types of sexual contact, her testimony encompassed at least five incidents of unlawful touching. Moreover, because the victim's testimony and the defendant's confession differ, there were other incidents the jury could have used to convict, if they indeed accredited his confession. These facts are analogous to those in Tidwell and as to the second victim in Shelton in that there is no way to associate a particular event of unlawful contact with a specific indictment.

-29-

This error was not harmless. At both the close of the state's proof and the close of all the proof, the defendant requested that the state make an election as to the offenses. Neither the jury instructions nor the state's closing argument were curative. The trial judge did not specifically instruct the jury as to the requirements for a unanimous verdict. He merely instructed, "your verdict, whether 'guilty' or 'not guilty' must be unanimous." In addition, during its closing argument, the state did not limit their recitation of the proof to any three specific instances. Rather, the state suggested that the jury believe both the defendant's confession and the victim's testimony as well.

On this basis, I would ordinarily remand to the trial court for a new trial.

_____
Gary R. Wade, Judge